TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00687-CV






Thomas N. Kearns and Vineyard Bay Development Company, Inc., Appellants



v.



Bruce Liesman, Trustee; Alamo Title Insurance of Texas; and

The Vineyard on Lake Travis, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 92-15811, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 






 Appellees Bruce Liesman, Trustee, and Alamo Title Insurance of Texas sued Vineyard Bay
Development Company for payment on a note, seeking to foreclose liens on real estate owned by Vineyard
Bay. Liesman and Alamo also sued appellant Thomas Kearns as a defendant and asked the court to
declare that their liens on the land were superior to that of Kearns. Following a trial without a jury, the trial
court rendered judgment awarding foreclosure of the liens and declaring that the liens enjoyed priority over
Kearns' lien. We will affirm the trial court's judgment.


BACKGROUND

 The parties do not dispute the facts forming the background of this case. In 1984, The
Vineyard on Lake Travis borrowed money from the United Bank of Texas. United Bank secured payment
of its note by a deed of trust on land The Vineyard planned to develop. In 1986, The Vineyard sold fifty-three lots in the planned subdivision to Vineyard Bay Development Company in exchange for Vineyard
Bay's assumption of the United Bank note. The Vineyard reserved a vendor's lien on the fifty-three lots
and obtained a separate deed of trust to secure the assumption. Kearns subsequently loaned money to
Vineyard Bay and took yet another lien on three of the fifty-three lots. (1)

 Pursuing its real estate development, Vineyard Bay sold lots in the subdivision to individual
homeowners. The lots conveyed were released from United Bank's lien, but remained subject to the liens
obligating Vineyard Bay on the note it had assumed. As the homeowners purchased them, Alamo insured
title to the lots. United Bank was declared insolvent, and the Federal Deposit Insurance Corporation
became the holder of the note. On Vineyard Bay's default in paying the note and the FDIC's suit against
it, Vineyard Bay negotiated a settlement by which it paid part of the balance due. The FDIC then sued The
Vineyard for the deficiency.

 In the case now on appeal, The Vineyard sued Vineyard Bay, seeking indemnity for the
amount it was obligated to pay the FDIC and foreclosure of its vendor's lien. Alamo learned of this suit
and, after investigating, determined that it would be responsible for defending title to the lots its insureds
had bought from Vineyard Bay. Alamo therefore purchased the note from the FDIC and released The
Vineyard from liability in exchange for The Vineyard's transfer of its liens on the fifty-three lots to Alamo's
named trustee, Bruce Liesman. Liesman then released the liens on all but the four lots still owned by
Vineyard Bay. Liesman and Alamo intervened in this suit against Vineyard Bay. (2) Liesman sought to
foreclose the liens on the four lots that Vineyard Bay still owned. Three of these lots remained subject to
Kearns' junior lien. Kearns asserted that, as a junior lienholder, he was entitled to benefit from the
equitable doctrine of marshaling assets. By its judgment, the trial court denied Kearns any equitable relief
and granted Liesman a judicial foreclosure on the four lots. We will refer to Liesman and Alamo together
as Alamo and to the liens securing the note Vineyard Bay assumed as Alamo's liens or the assumption liens.


DISCUSSION

 In his sole point of error, Kearns asserts that the trial court erred in concluding that the
doctrine of marshaling applies only to subsequent transferees and, therefore, in failing to apply the doctrine
to him. (3) Kearns obtained his lien after the assumption liens were in place, putting Kearns in the position
of a junior lienholder on the three lots. In conclusion of law number twenty, the trial court stated: "The
doctrine of marshalling is applicable only as to subsequent transferees. Since neither Defendant is a
subsequent transferee, the doctrine is inapplicable." Kearns challenges this conclusion as being incorrect
as a matter of law.

 The equitable doctrine of marshaling assets encompasses two separate doctrines, the two-funds doctrine and the rule of inverse order of alienation. See John F. Green, Jr., Marshaling Assets in
Texas, 34 Tex. L. Rev. 1054, 1054 (1956). The two-funds doctrine applies when a creditor holds a lien
on two funds to secure the payment of a debt, one of which funds is subject to an inferior lien. If the debtor
defaults, the junior lienholder may require the senior lienholder to satisfy its lien first out of that fund not
subject to the inferior lien; if such fund is sufficient to satisfy the debt, the senior lien on the fund subject to
the inferior lien is discharged. Burg v. Hitzfeld, 89 S.W.2d 272, 275-76 (Tex. Civ. App.--San Antonio
1935, writ dism'd); see Green, supra, at 1055. Applying the two-funds doctrine protects the junior
lienholder from having his security destroyed when the senior lienholder could have satisfied its lien on
property not doubly secured. Wileman v. Federal Farm Mortgage Corp., 169 S.W.2d 1013, 1015
(Tex. Civ. App.--Texarkana 1943, no writ); Ohio Cultivator Co. v. People's Nat'l Bank, 55 S.W. 765,
771 (Tex. Civ. App.--Dallas 1900, no writ). Had Vineyard Bay done nothing more than grant a second
lien on part of its land to Kearns, Kearns might have invoked the doctrine to compel Alamo to satisfy its
senior liens from that part of the land not subject to Kearns' junior lien.

 After granting a second lien to Kearns, however, Vineyard Bay sold forty-nine of its lots
to individual homeowners, subject to Alamo's liens. Alamo's liens, after these sales, covered properties
in the hands of more than one "debtor." The two-funds doctrine, which requires that two creditors seek
to charge the same debtor, does not apply to such a case. Rogers v. Blum, 56 Tex. 1, 8 (1881); see
Keasler v. Wray, 171 S.W. 534, 536 (Tex. Civ. App.--Texarkana 1914, no writ); Ohio Cultivator Co.,
55 S.W. at 771. Kearns must therefore invoke the rule of inverse order of alienation. This doctrine applies
when a debtor conveys various parcels of mortgaged property for value to successive grantees. On the
debtor's default and the lienholder's threatened foreclosure, the grantees may be entitled to compel the
lienholder to resort first to any property remaining in the debtor's hands and then to proceed against the
parcels in the reverse order in which the debtor transferred them. Vansickle v. Watson, 123 S.W. 112,
114 (Tex. 1909). The inverse-order rule protects trusting or ill-advised buyers of mortgaged property by
allowing the mortgaged debt to be first satisfied from unsold or more recently sold property. Maurer v.
Arab Petroleum Corp., 135 S.W.2d 87, 88 (Tex. 1940); see Green, supra, at 1058. The doctrine, being
purely one of equity, does not apply automatically, and courts asked to apply it must scrutinize the
circumstances of each case. E.g.,Vansickle, 123 S.W. at 115.

 An extension of the inverse-order rule may apply if the lienholder, with knowledge of the
grantee's right to marshaling, releases from its lien a tract primarily liable, that being an unsold or most
recently sold tract. Those tracts liable after the first are then held to be discharged from the senior lien to
the extent of the value of the land released. Watson v. Vansickle, 114 S.W. 1160, 1164 (Tex. Civ.
App.--Dallas), rev'd on other grounds, 123 S.W. 112 (Tex. 1909). Kearns contends that, by releasing
the homeowners' lots from the assumption liens, Alamo effectively discharged the senior liens on the three
lots subject to his junior lien.

 The inverse-order rule clearly applies to benefit subsequent purchasers. But Kearns is not
a subsequent purchaser. To receive its protection, Kearns must first establish that the rule considers junior
lienholders to be equivalent to subsequent purchasers. Kearns must further argue that the extension of the
rule applies in view of Alamo's release of the homeowners' lots from the assumption liens. The trial court
denied Kearns relief on the ground that the doctrine cannot be claimed by a junior lienholder. Although
several older cases have applied the rule to protect junior lienholders, we need not resolve this issue to
determine Kearns' point of error. See First State Bank v. Cox, 139 S.W. 1, 3 (Tex. Civ. App.--Dallas
1911, no writ); John M. Bonner Memorial Home v. Collin County Nat'l Bank, 122 S.W. 430, 433
(Tex. Civ. App.--Dallas 1909, no writ); see also Maurer, 135 S.W.2d at 88 (stating that inverse-order
rule protects subsequent vendees or junior lienholders).

 Assuming that the trial court reached an incorrect legal conclusion, the judgment will not
be reversed if the controlling findings of fact will support a correct legal theory. Westech Eng'g, Inc. v.
Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). The trial
court made a fact finding on one element of the marshaling doctrine, namely, that Kearns is not a
subsequent transferee. (4) When the trial court gives express findings on some elements of a defense but omits
other elements, we assume that the court made findings on the omitted elements in a manner consistent with
the judgment. Tex. R. Civ. P. 299; Bednarz v. State, 176 S.W.2d 562, 563 (Tex. 1943); Leonard v.
Eskew, 731 S.W.2d 124, 132 (Tex. Civ. App.--Austin 1987, writ ref'd n.r.e.). Kearns must show on
appeal that the trial court erred in determining each element against him. See Johnson v. Garza, 884
S.W.2d 831, 835 (Tex. App.--Austin 1994, writ denied). 

 To benefit from the doctrine of marshaling, Kearns was required to prove in view of all the
circumstances that the equity of his position surpassed that of the party or parties to be affected by
marshaling. Moody Day Co. v. Westview Nat'l Bank, 452 S.W.2d 572, 574 (Tex. Civ. App.--Waco
1970, writ ref'd n.r.e.). Thus, Kearns was not entitled to marshaling if it would delay or inconvenience
Alamo or prejudice it in any manner. Bewley Mills v. First Nat'l Bank, 110 S.W.2d 201, 209 (Tex. Civ.
App.--Fort Worth 1937, writ dism'd); Ohio Cultivator Co., 55 S.W. at 771. Kearns also had to show
that the value of the later acquired lots was adequate to satisfy the debt. Morris v. Biggs & Co., 165
S.W.2d 915, 918 (Tex. Civ. App.--Amarillo 1942, writ dism'd); Bewley Mills, 110 S.W.2d at 209-210. 
Further, Kearns was required to prove that, when Alamo released the assumption liens on the
homeowners' lots, it had actual knowledge of his right to marshaling. Biswell v. Gladney, 213 S.W. 256,
258 (Tex. Comm'n App. 1919, judgm't adopted); Watson, 123 S.W. at 114-15; Wolfe v. Houston Land
& Irrigation Co., 98 S.W. 1069, 1070 (Tex. Civ. App.--Houston 1906, no writ); Ohio Cultivator Co.,
55 S.W. at 771; see also Abbott v. First Nat'l Bank, 155 S.W. 321, 324 (Tex. Civ. App.--Amarillo
1913, no writ).

 On appeal, Kearns attacks Alamo's equities and asserts that the value of the homeowners'
lots exceeds the amount secured by the assumption liens. He fails, however, to argue that Alamo knew
of his junior lien when it released the homeowners' lots from the assumption liens. Furthermore, Kearns
does not specifically argue that the assumption liens should first be satisfied from the one unsold lot before
resorting to the homeowners' lots or to the three lots subject to his lien. We determine that, by failing to
assert that the one lot should be sold first and the proceeds credited to payment of the note before selling
the three lots, Kearns has waived this argument on appeal. Harris v. General Motors Corp., 924 S.W.2d
187, 188 (Tex. App.--San Antonio 1996, writ denied). We therefore cannot agree that Kearns has
established his entitlement to marshaling. Even had Kearns argued that he established every element of
marshaling, he has not provided this Court with any of the numerous exhibits admitted in evidence at trial. 
We would be unable to assess the evidentiary support for the elements of marshaling in the absence of a
complete reporter's record. Schafer v. Conner, 813 S.W.2d 154, 155 (Tex. 1991).

 Because Kearns has failed to show his entitlement to marshaling by attacking every element
found against him and by providing a complete record on appeal, we overrule point one.

 We affirm the judgment of the trial court.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: January 15, 1998

Do Not Publish
1. Although Kearns' lien initially covered four lots, he later released his lien as to one of them.
2. The Vineyard remained in the suit only to seek attorney's fees from Vineyard Bay for its efforts
to collect on the note.
3. Vineyard Bay perfected an appeal but, despite representing to this Court that it would move to
dismiss its appeal, tendered neither such a motion nor a brief on the merits.
4. Although this finding is ultimately immaterial to the doctrine of marshaling, the trial court intended
the finding to relate to Kearns' claim that the doctrine applied to him.



ontrolling findings of fact will support a correct legal theory. Westech Eng'g, Inc. v.
Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). The trial
court made a fact finding on one element of the marshaling doctrine, namely, that Kearns is not a
subsequent transferee. (4) When the trial court gives express findings on some elements of a defense but omits
other elements, we assume that the court made findings on the omitted elements in a manner consistent with
the judgment. Tex. R. Civ. P. 299; Bednarz v. State, 176 S.W.2d 562, 563 (Tex. 1943); Leonard v.
Eskew, 731 S.W.2d 124, 132 (Tex. Civ. App.--Austin 1987, writ ref'd n.r.e.). Kearns must show on
appeal that the trial court erred in determining each element against him. See Johnson v. Garza, 884
S.W.2d 831, 835 (Tex. App.--Austin 1994, writ denied). 

 To benefit from the doctrine of marshaling, Kearns was required to prove in view of all the
circumstances that the equity of his position surpassed that of the party or parties to be affected by
marshaling. Moody Day Co. v. Westview Nat'l Bank, 452 S.W.2d 572, 574 (Tex. Civ. App.--Waco
1970, writ ref'd n.r.e.). Thus, Kearns was not entitled to marshaling if it would delay or inconvenience
Alamo or prejudice it in any manner. Bewley Mills v. First Nat'l Bank, 110 S.W.2d 201, 209 (Tex. Civ.
App.--Fort Worth 1937, writ dism'd); Ohio Cultivator Co., 55 S.W. at 771. Kearns also had to show
that the value of the later acquired lots was adequate to satisfy the debt. Morris v. Biggs & Co., 165
S.W.2d 915, 918 (Tex. Civ. App.--Amarillo 1942, writ dism'd); Bewley Mills, 110 S.W.2d at 209-210. 
Further, Kearns was required to prove that, when Alamo released the assumption liens on the
homeowners' lots, it had actual knowledge of his right to marshaling. Biswell v. Gladney, 213 S.W. 256,
258 (Tex. Comm'n App. 1919, judgm't adopted); Watson, 123 S.W. at 114-15; Wolfe v. Houston Land
& Irrigation Co., 98 S.W. 1069, 1070 (Tex. Civ. App.--Houston 1906, no writ); Ohio Cultivator Co.,
55 S.W. at 771; see also Abbott v. First Nat'l Bank, 155 S.W. 321, 324 (Tex. Civ. App.--Amarillo
1913, no writ).

 On appeal, Kearns attacks Alamo's equities and asserts that the value of the homeowners'
lots exceeds the amount secured by the assumption liens. He fails, however, to argue that Alamo knew
of his junior lien when it released the homeowners' lots from the assumption liens. Furthermore, Kearns
does not specifically argue that the assumption liens should first be satisfied from the one unsold lot before
resorting to the homeowners' lots or to the three lots subject to his lien. We determine that, by failing to
assert that the one lot should be sold first and the proceeds credited to payment of the note before selling
the three lots, Kearns has waived this argument on appeal. Harris v. General Motors Corp., 924 S.W.2d
187, 188 (Tex. App.--San Antonio 1996, writ denied). We therefore cannot agree that Kearns has
established his entitlement to marshaling. Even had Kearns argued that he established every element of
marshaling, he has not provided this Court with any of the numerous exhibits admitted in evidence at trial. 
We would be unable to assess the evidentiary support for the elements of marshaling in the absence of a
complete reporter's record. Schafer v. Conner, 813 S.W.2d 154, 155 (Tex. 1991).

 Because Kearns has failed to show his entitlement to marshaling by attacking every element
found against him and by providing a complete record on appeal, we overrule point one.

 We affirm the judgment of the trial court.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: January 15, 1998

Do Not Publish
1. Although Kearns' lien initially covered four lots, he later released his lien as to one of them.